This Court granted certiorari to determine whether the decision of the Court of Criminal Appeals conflicts with prior decisions of our courts dealing with the effect of a venireman's failure to make disclosure
As found by the Court of Criminal Appeals, the juror in question was a former policeman (a deputy sheriff). During his questioning of the panel of which this juror was a member, the defense counsel asked these questions:
 Have any of you ever yourselves been the victim of a crime of violence of any sort, such as being shot at, shot, stabbed, robbed, burglarized?
. . .
 Any of you have any close members of your family; those are the same folks that I just mentioned to you, that has ever been victims of a crime just like we have talked about? Close friends or family?
. . .
 Anyone else that has had a good friend or family or yourselves that has been a victim of any sort of criminal activity?
The particular juror, for whom this was not the first occasion for jury service in a criminal trial, did not respond to these questions. His failure to answer was raised in the petitioner's motion for a new trial. The juror's examination at the hearing on that motion revealed that during the evening of May 3, 1979, approximately five months prior to the trial, he and his wife were asleep inside their rented house when the underpinning of the house was struck by gunfire. His two vehicles, parked in a driveway adjacent to his house, were also struck by gunfire. He reported the incident to the local police who investigated and filed a report. Three spent shotgun shells were located in the street near his house
The Court of Criminal Appeals affirmed the denial of the motion for a new trial, apparently for two reasons, viz.: (1) the evidence at the hearing did not reveal that the juror had in fact been the victim of a crime of violence of the type inquired into; and (2) nothing produced at the hearing indicated any bias against the petitioner or that knowledge of the incident on the part of either the petitioner or his lawyer would have resulted in this juror's being struck from the venire
Neither party argues with the principle that parties have the right, within the trial court's sound discretion, to examine jurors on any matter that might tend to affect their verdict, cfSanders v. Scarvey, 284 Ala. 215, 224 So.2d 247 (1969) (citing this principle as codified by Ala. Code of 1940, Tit. 30, § 52),i.e., as tending to show bias or interest. Dyer v. State,241 Ala. 679, 4 So.2d 311 (1941) *Page 733 
As the record discloses, when examining the jurors defense counsel asked two distinct inquiries. On the one hand they were asked whether or not they themselves had been victims of a crime of violence "such as being shot at, shot, . . . robbed . . ." etc. On the other hand they were asked whether any of them or their family had been a victim of any sort of criminal activity.
Of course, it is possible, as the Court of Criminal Appeals appears to have concluded, that the latter inquiry was made in direct context with the first, involving crimes of a nature akin to robbery. The language of the two inquiries does not make that conclusion inescapable, however, and it is equally possible that counsel intended to elicit the more general information sought by the question. Surely such recent information would have been recalled by a former deputy sheriff who had reported the incident to the local police and who worked with them to identify the person who did the shooting. At the time of the shooting incident it was a misdemeanor to willfully or wantonly injure, or attempt to injure, any property of another, Ala. Code of 1940, Tit. 14, § 115 (1); assaults and attempts were also criminal offenses, supra, §§ 33, 38, 42. See also Medley v. State, 156 Ala. 78,47 So. 218 (1908). Though neither the juror nor his wife was physically injured by any of the shooting still the juror reasonably could have been a victim of a "sort of criminal activity" when, while asleep in their (rented) home it, and the juror's parked vehicles, were struck by gunfire. His complaint to the police indicates that he thought as much
Was the petitioner prejudiced by the juror's failure to respond? On that issue the test is whether the petitioner might have been, not whether he actually was prejudiced. Beauregard vState, Ala.Cr.App., 372 So.2d 37 (1979), and cases cited therein
In Leach v. State, 31 Ala. App. 390, 18 So.2d 285 (1904), the venire were qualified as to service as law enforcement officers Two answered affirmatively and were stricken. One failed to make this disclosure and was ultimately selected. That Court held it to have been error to refuse a new trial whether or not the concealment was deliberate or unintentional. The Court added:
 Another principle equally sacrosanct is that every juror must stand indifferent to the verdict "Impartiality, freedom from bias or prejudice, capacity without fear, favor, or affection, a true deliverance to make between the accused and the State, the law demands as the qualification of a juror * * *. It is not only such (family) relationship, but temporary relations, formed in the course of business, or in the intercourse of life, which may disqualify, whenever they may import a just belief of a want of impartiality — that a juror can not stand indifferent, either from interest, or from the favor springing out of the relation." Brazleton v. State, 66 Ala. 96
 If these legal stipulations, to an accused, are to be more than the mumbling of a meaningless shibboleth, they should here have play to effect a reversal of the cause, to the end that this defendant receive the benefit of the privilege sought to be guaranteed
There is sustaining authority elsewhere
 "Where the party has examined the jurors concerning their qualifications, and they do not answer truly, it is manifest that he is deprived of his right of challenge for cause, and is deceived into foregoing his right of peremptory challenge. * * * And accordingly, in most States the fact that a juror answered falsely as to his qualifications is a recognized ground for a new trial" (Hayne on New Trial Appeal, p. 143, Section 45) — we would say, of course, where there was probable prejudice to the defendant by such juror's conduct. See also People v Galloway, 202 Cal. 81, 259 P. 332; Williams v Bridges, 140 Cal.App. 537, 35 P.2d 407; Hyman v Eames, C.C. [Colo.], 41 F. 676; Ippolito v. United States, 6 Cir. [Ohio], 108 F.2d 668 *Page 734 
 It would, it seems to us, be the rankest casuistry to contend that there was no probable injury to defendant by the concealment of the juror, aforesaid It is but natural that such a juror, as a general proposition, who had been engaged in the same business, had arrested persons guilty of similar misconduct, and had probably been subjected to like attempted assaults, as the victim here, would stand less indifferent than a layman, free from the tug of such former professional influences
We are persuaded by the reasoning of that Court that this juror's failure to disclose the incident resulted in the probable injury to the petitioner. It is true, of course, that the shooting incident did not involve robbery, the offense petitioner was accused of committing. The nature of the shooting incident, however, with its potential for personal injury as well as property damage springing from the use of actual force, directed against him, nevertheless was activity which, as a general proposition, would have naturally caused a former deputy sheriff-juror to stand less indifferent to someone charged with a forceful crime than a layman, "free from the tug of . . former professional influences."
The State argues that because petitioner's counsel had represented this juror on one occasion before this trial gave him no cause to complain now, apparently under the presumption that counsel himself was aware of the juror's background. The record, however, establishes that the previous representation in question involved a civil matter which was settled without litigation, and that this juror had never informed petitioner's counsel of the shooting incident. In fact, the record is bare of any fact suggesting any knowledge of it on the part of counsel for the petitioner. Accordingly, he was not foreclosed from raising the point on his post-trial motion
Under these circumstances and for the foregoing reasons, therefore, we have concluded that the Court of Criminal Appeals must be reversed, and that this cause must be remanded to that Court with directions to order a new trial. It is so ordered
REVERSED AND REMANDED WITH DIRECTIONS
TORBERT, C.J., and JONES, ALMON, SHORES, EMBRY and ADAMS, JJ., concur
MADDOX and FAULKNER, JJ., dissent